KLEES, Judge.
This suit arises from a petition for limited interdiction brought by plaintiff, Antho *1377 ny P. Badalamenti, against his father, Nicholas L. Badalamenti, the defendant. The trial court entered judgment in favor of the defendant finding that Nicholas Ba-dalamenti was not in need of limited interdiction. From that judgment, plaintiff appeals. We affirm.
Nicholas Badalamenti is a 53 year old man who has suffered at least one major stroke resulting in brain injury and leaving him paralyzed on one side of his body. Because of his stroke, he also suffers from an aphasic disorder, limiting his ability to communicate.
The defendant-appellee lives in a home and is attended by sitters, who prepare his meals, bathe him, and generally care for all of his physical needs. The home and services are paid for by the defendant’s brother, Michael J. Badalamenti.
At issue is whether Nicholas Badalamen-ti has the ability to effectively administer his financial affairs. On appeal, plaintiff-appellant alleges that the trial court erred in failing to find that Nicholas Badalamen-ti’s physical infirmities render him 1) incapable of administering his estate; 2) incapable of protecting his property and succession rights with respect to his conveyance of property to his brother Michael J. Bada-lamenti; and 3) incapable of resisting undue influence on the part of Michael. Specifically, plaintiff alleges that the court should have granted the limited interdiction based upon the propriety of a sale made by Nicholas to his brother, Michael, of (Nicholas’) rights to property inherited from their mother. Plaintiff asserts that his father had previously indicated his desire to rescind the transfer of his rights in the property to Michael through legal action. Later, after talking to his brother, Nicholas decided not to pursue the rescission.
This Court, in In Re Adams, 209 So.2d 363 (La.App. 4th Cir.1968), set forth the standard for determining when interdiction should result. This court stated:
“.... interdiction is a harsh remedy and should be pronounced only where the proof is clear and conclusive; and there are three pre-requisites to the pronouncement of a judgment of interdiction:
(1) incapacity to administer one’s estate;
(2) inability to care for one’s person; and
(3) an actual necessity for the interdiction.”
Substantial evidence was presented on behalf of the defendant which provided clear and conclusive proof that limited interdiction was not necessary. Dr. Jay Seastrunk, a psychiatrist, testified that although Nicholas Badalamenti had hemiple-gia and aphasis, he understood what was communicated to him. He testified that the defendant’s major difficulty was his expression of speech. When asked whether he thought Nicholas was incapable of administering his estate, Dr. Seastrunk stated emphatically that he did not think that the defendant was incapable of administering his estate. Three lay witnesses who spent a great deal of time with Nicholas all stated that given time the defendant could clearly communicate his wishes and well understood what was communicated to him.
Further, while it is apparent that the trial court found that Nicholas Badalamenti was unable to care for his person, there was still no evidence presented to satisfy the third prerequisite, that is, an actual necessity for the interdiction. Nicholas is attended by sitters and Michael has taken care of Nicholas since his stroke. Additionally, Nicholas testified that he loved his brother and that they were very close, thereby, contradicting plaintiff’s claim that Nicholas was unduly influenced by Michael.
The weight of the testimony in this matter leads us to conclude that Nicholas Ba-dalamenti understands what he wants and can direct and communicate his desires. Although Nicholas Badalamenti suffers from physical infirmities which adversely affect his ability to communicate, the record is clear that with professional assistance the defendant can administer his estate as he wishes.
*1378 Accordingly, for the reasons above, the judgment of the trial court is hereby affirmed.
AFFIRMED.
WILLIAMS, Judge, dissents.
I respectfully dissent.
Defendant suffered at least one major stroke. As a result, he is handicapped physically, confined to a wheelchair, and must have someone look after most of his physical needs. At issue is Nicholas Bada-lamenti’s ability to handle his financial affairs, particularly in connection with the sale to his brother of his rights to property inherited from their mother. Plaintiff asserted that defendant previously had indicated a desire to pursue legal action against his brother to set aside the transaction, but changed his mind and dropped the action.
Article 389.1 of the Louisiana Civil Code provides for limited interdiction.
When a person is declared incapable by reason of mental retardation, mental disability, or other infirmity under the provisions of Articles 389 or 422 of the Louisiana Civil Code, of caring for his own person or of administering his estate, a court of competent jurisdiction may appoint a limited curator to such person or his estate. Pending appointment of a limited curator, the court shall inquire into the specific abilities and disabilities of the incapacitated person and such limited curator shall have only those powers necessary to provide for the demonstrated needs of the incapacitated person. The powers, duties, responsibilities, and any liabilities of the limited curator shall be specifically set forth in a judgment of limited interdiction.
The rights of the limited interdict shall be infringed in the least restrictive manner consistent with his incapacities. A judgment of limited interdiction shall not operate to deprive the incapacitated person of any civil right, the right to contract, or any right pertaining to any license, permit, privilege, or benefit unless specifically set forth in the judgment.
Article 422 provides that any person who cannot take care of his person or administer his estate due to any infirmity may be interdicted.
Plaintiff does not request to have defendant interdicted for any purpose other than to have his dealings with his brother administered. At trial, Dr. Jay W. Seastrunk II, a psychiatrist, testified that defendant suffered some severe damage to his ability to communicate and suffered from recent memory loss. Furthermore, Dr. Seastrunk testified that defendant’s communication difficulties would result in his saying “no” when he meant “yes”, and that it might be necessary to go over things many times before he was able to comprehend something new. Nevertheless, Dr. Seastrunk stated that defendant was able to take care of his person and to administer his estate.
Dr. Philip T. Griffin, a psychologist, testified on behalf of the plaintiff. He tested defendant, using a non verbal test because of defendant’s communication difficulties. He testified that defendant had a very low score on intelligence, indicating that of a small child and that his social quotient was of a four and one-half year old.
Defendant testified. He indicated that he was satisfied with his relationship with his brother and also with the business transactions that he had had with him. Unfortunately, we feel that we cannot give a great deal of weight to this testimony. Obviously defendant was under a great deal of stress at the time, and the difficulties in communication outlined by the doctors who had examined him were clearly evident.
After careful review of the testimony of all of the witnesses, I would be forced to conclude that the trial court erred by dismissing plaintiff’s petition. The testimony of Dr. Seastrunk is contradictory. He stated that defendant has recent memory loss, has trouble communicating, says no when *1379 he means yes, yet also testified that he is capable of taking care of himself and administering his estate. Witnesses who take care of defendant testified that he was paralyzed and needed someone to cook for him, shave him, bathe him, and give him his medicine. Clearly, defendant is incapable of taking care of his person or administering his estate as provided by Article 389.1.
We are a court of law, and not one of equity. My opinion does not in any way suggest that there has been any impropriety in the dealings between defendant and his brother. That is not before us. Nor do I suggest that defendant’s brother has acted in any way other than that of a loving, caring sibling. What I would hold is that the law compels us, based upon the evidence presented at trial, to grant plaintiff’s request that a curator be appointed solely for the purpose of “mak[ing] decisions respecting dealings in the property rights ostensibly transferred to his brother, Michael” [plaintiff’s Brief at 14].
For the foregoing reasons, I respectfully dissent.